1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

JACOB B. GRZECZKOWSKI,

NO.  C12-1862-JCC-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

12

13

Defendant.

14   Plaintiff Jacob B. Grzeczkowski appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied his applications for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

19                    I.        FACTS AND PROCEDURAL HISTORY

20   At the time of the administrative hearing, plaintiff was a thirty-five year old man with

21   the equivalent of a high school education and some vocational training.  Administrative Record

22   ("AR") at 43, 137, 144-45.  His past work experience includes employment as a janitor, cook,

23

24

[1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

and kitchen supervisor, although his longest job at Dominos Pizza lasted only five or six months in 1994.  AR at 41-43, 48, 144, 163.

On February 23, 2010, plaintiff filed a claim for SSI payments, alleging an onset date of January 1, 2001.  AR at 119-25.  Plaintiff asserts that he is disabled due to bipolar disorder, mood disorder, anxiety, hepatitis C, migraines, and memory problems.  AR at 137, 143-44.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 62-65, 67-72.  Plaintiff requested a hearing, which took place on April 18, 2011.  AR at 38-59.  On May 12, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 19-37.  Specifically, the ALJ found that plaintiff could work as a janitor, office helper, or night cleaner.  AR at 31.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 5, 2012, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 5.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

1   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

2   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

3   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

4   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

5   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

6   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

7   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

8   must be upheld.  *Id.*

9         The Court may direct an award of benefits where "the record has been fully developed

10   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

11   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

12   (9th Cir. 1996)).  The Court may find that this occurs when:

13         (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
     claimant's evidence; (2) there are no outstanding issues that must be resolved
14     before a determination of disability can be made; and (3) it is clear from the
     record that the ALJ would be required to find the claimant disabled if he
15     considered the claimant's evidence.

16   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

17   erroneously rejected evidence may be credited when all three elements are met).

18                      IV.     EVALUATING DISABILITY

19         As the claimant, Mr. Grzeczkowski bears the burden of proving that he is disabled

20   within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111,

21   1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to

22   engage in any substantial gainful activity" due to a physical or mental impairment which has

23   lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C.

24   §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments

REPORT AND RECOMMENDATION - 3

are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On May 12, 2011, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since
       February 23, 2010, the application date.

2.    The claimant has the following severe impairments: bipolar disorder
       without psychosis and cannabis dependence in early remission.

3.    The claimant does not have an impairment or combination of
       impairments that meets or medically equals one of the listed
       impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds
       that  the claimant has the residual functional capacity to perform a full
       range of work at all exertional levels but with the following
       nonexertional limitations: he has the mental capability to adequately
       perform the mental activities generally required by competitive,
       remunerative work as follows:  understand, remember and carry out
       simple l to 2 step instructions, required of jobs classified at a level of
       SPV 1 and 2 or unskilled  work; he would have average or moderate
       ability to perform sustained work activities (i.e. can maintain attention
       and concentration, persistence and  pace) in an ordinary work setting
       on a regular and continuing basis (i.e., 8 hours a day, for 5 days a
       week, or an equivalent work schedule) within customary tolerances of
       employer rules regarding sick leave and absence; he can make
       judgments on simple work-related decisions and he can respond
       appropriately to supervision, coworkers and deal with changes all

within a stable work environment not dealing with the general public as in a sales/cashier position or where the general public is frequently encountered as an essential element of the work process such as telemarketing, incidental contact with the general public is not precluded so long as the public is not a part of the work process.

5.   The claimant has no past relevant work

6.   The claimant was born on XXXXX, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[3]

7.   The claimant has at least a high school education and is able to communicate in English.

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since February 23, 2010, the date the application was filed.

AR at 24-31.

VI.   ISSUE ON APPEAL

1.   Did the ALJ err by rejecting medical opinions by an examining psychiatrist, examining psychologist, and psychiatric nurse practitioner?

Dkt. 20 at 1; Dkt. 21 at 2.

VII.   DISCUSSION

A.   <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

1    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

2    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

3    consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

4    957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

5                  2.      *Dr. Hopfenbeck*

6           Psychiatrist James Hopfenbeck, M.D., examined and evaluated plaintiff on November

7    16, 2009 for the Department of Social and Health Services ("DSHS").  He observed that

8    plaintiff had marked symptoms of mania and pressured speech, and commented that plaintiff

9    had very rapid speech, tended to over explain, and get off track.  AR at 325-30.  On mental

10   status exam, plaintiff could not perform serial 7 subtractions and made a few mistakes

11   subtracting 3's from 20. AR at 330.  Dr. Hopfenbeck diagnosed plaintiff with bipolar affective

12   disorder and cannabis dependence, and assessed a Global Assessment of Functioning Score

13   ("GAF") of 40.[4]  He noted that plaintiff had just re-started a "trial of appropriate medication"

14   in September 2009, but had tried numerous medications in the past.  AR at 328-29.  He opined

15   that plaintiff was "markedly" limited in his ability to understand more than two step

16   instructions, exercise judgment and make decisions, interact appropriately in public contacts,

17   tolerate the pressures and expectations of a normal work setting, and maintain appropriate

18

---

19          [4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
     clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
20   ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
     A GAF score falls within a particular 10-point range if either the symptom severity or the level
21   of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
     "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
22   in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious
     symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
23   in social, occupational, or school functioning," such as the lack of friends and/or the inability
     to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and
24   communication" or "major impairment in several areas, such as work or school, family
     relations, judgment, thinking or mood."

REPORT AND RECOMMENDATION - 8

behavior in a work setting.  AR at 328.  With respect to plaintiff's substance abuse, Dr. Hopfenbeck noted that plaintiff was dependent on cannabis, but opined that "cannabis appears separable from [his] mood disorder" and that "he needs priority to be stabilization on medications."  AR at 327.  Finally, Dr. Hopfenbeck opined that plaintiff would be impaired for the next two to three years.  AR at 329.

The ALJ extensively summarized the medical evidence, and concluded that "the record supports that when the claimant is compliant with mental health treatment his symptoms improved.  For example, in December 2009, the claimant reported that he was taking 80 mg of geodeon and he slept better.  He denied any side effects.  He reported that his mood had been fairly even."  AR at 28.  At that time, plaintiff "also reported that he planned to stay on medications and he was doing very well.  On discharge from mental health treatment in December 2009, the claimant reported that this was the best he had ever done in terms of least amount of marijuana use.  He reported that he was happy with his geodone and he wanted to stay medically compliant."  AR at 28.  With respect to medical records from January through June 2010, the ALJ noted that plaintiff's bipolar disorder was controlled by geodon and that clinicians noted that plaintiff's "low mood was likely related to significant social stressors."  AR at 28.  In June 2010, plaintiff reported no manic episodes since starting geodone although he reported that geodon did not help with his depression.  AR at 28.

The ALJ gave "little weight" to Dr. Hopfenbeck's opinion that plaintiff "was moderate to markedly limited in cognitive and social factors including the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting."  AR at 29.  Specifically, the ALJ noted that Dr. Hopfenbeck's opinion was given when plaintiff had recently restarted a trial of medication after being off medication for five years.  AR at 29.  The

ALJ also cited plaintiff's "lack of treatment and substance use as noted by Dr. Hopfenbeck during that time" as reasons for rejecting Dr. Hopfenbeck's opinion. AR at 29.

Plaintiff contends that "the ALJ erred by failing to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Hopfenbeck's opinion. First, [plaintiff] had been on medication prescribed by a psychiatrist at Harborview Medical Center for two months prior to Dr. Hopfenbeck's evaluation of him." Dkt. 20 at 6 (citing AR at 339, 341-42, 349-50). Plaintiff asserts that "despite compliance with his medication regiment over the next year, [plaintiff]'s depression did not improve. Second, Dr. Hopfenbeck was aware of [plaintiff]'s substance abuse at the time and opined that he did not believe 'alcohol or drug treatment would be likely to improve [his] ability to function in a work setting.'" *Id.* (citing AR at 327). Finally, plaintiff points out that "the ALJ himself did not find that Grzeczkowski's substance abuse was a material factor." AR at 24.

The Commissioner responds that the ALJ reasonably discounted Dr. Hopfenbeck's opinion because it was inconsistent "first, with evidence that Plaintiff improved with treatment; second, with objective exam findings; and third, with Plaintiff's activities of daily living. Each of these reasons supplies substantial evidence to support the ALJ's [decision]." Dkt. 21 at 4. The Commissioner points out that upon plaintiff's discharge from inpatient treatment in 1996, he was stable on medication and his symptoms were controlled. *Id.* at 5 (citing AR at 287, 235). There were no treatment records between October 1996 and September 2009, with the exception of injuries sustained in a fight during Hurricane Katrina in 2005, and "thereafter, plaintiff resumed treatment and gradually improved until he stabilized in December 2009." *Id.* (citing AR at 331-67). Specifically, plaintiff first "resumed treatment on September 10, 2009, when he presented to Harborview Mental Health Services (HMHS) reporting that he had not been on any medication for five years." *Id.* (citing AR at 367). Plaintiff was treated with

Risperdal and Geodon, and plaintiff "improved and his treatment was terminated on December 2, 2009." *Id*. at 5-6 (citing AR at 331).

The Commissioner asserts that records from 2010 and 2011 reflect that plaintiff began treatment with the Downtown Emergency Service Center ("DESC"), with a focus on obtaining housing. AR at 500. Although plaintiff was still experiencing some symptoms of depression, he reported that he was doing well once his housing became stable. *Id*. at 6 (citing AR at 459, 426, 500, 505, 509, 512-13, 516).

With respect to Dr. Hopfenbeck's opinion, the Commissioner argues that the ALJ did not err by concluding that his opinion did not account for plaintiff's improvement with treatment once he became stable on his medications in December 2009. Dkt. 21 at 7. Indeed, the Commissioner points out that "Dr. Hopfenbeck indicated Plaintiff would improve with treatment, [AR at 329], opining he 'needs stabilization, to learn the difference between abuse of cannabis and legitimate uses.'" *Id*. (citing AR at 329-30). The ALJ also correctly noted that plaintiff had only recently started treatment at the time of Dr. Hopfenbeck's November 2009 assessment, AR at 29, and "as discussed above, Plaintiff stabilized in December 2009, and his treatment at HMHS ended as a result." *Id*. (citing AR at 331). Although plaintiff still experienced depressive symptoms during his treatment at DESC, he improved upon achieving housing and "Dr. Hopfenbeck's opinion was less useful because it did not consider or account for these developments." *Id*.

Plaintiff replies that the Commissioner misconstrues his "improvement" following inpatient treatment in 1996, and in any event, this evidence is "too remote to be relevant to Grzeczkowski's condition in 2010 and 2011, and serve as a basis for rejecting contemporary medical opinions." Dkt. 22 at 3. With respect to plaintiff's improvement during his treatment at Harborview Medical Center from September 10, 2009 to December 2, 2009, plaintiff asserts

1   that although "by March 2010 Grzeczkowski's mania was controlled on Geodon, however, his

2   physician indicated that his depression seemed unaffected." *Id*. at 4 (citing AR at 437).

3   Similarly, "[i]n May 2010, his prescriber indicated that the increased Geodon dose was

4   working well because his thoughts were less confused, but noted that his depression persists."

5   *Id*. (citing AR at 430). Although the DESC records largely concern plaintiff's attempt to obtain

6   housing, plaintiff points out that plaintiff's improvement in his depressive symptoms once he

7   moved into housing "was transitory.  In fact, Grzeczkowski's counselor specifically noted that

8   he continued to be depressed after moving and seemed 'disappointed that housing did not

9   alleviate his depression.'"  *Id*. at 5 (citing AR at 501). Thus, plaintiff argues that "the medical

10  records demonstrate that [plaintiff] remained severely depressed despite medication

11  compliance and confirm the medical experts' opinion that [he] could not work on a sustained

12  basis." *Id* .at 6.

13          The Court agrees with the Commissioner that the ALJ provided several specific and

14  legitimate reasons for assigning less weight to Dr. Hopfenbeck's opinion.  As noted above,

15   the ALJ accurately pointed out that Dr. Hopfenbeck's November 2009 opinion was given

16  when plaintiff had recently restarted a trial of medication after being off medication for five

17  years.  AR at 29.  At the time of the evaluation, Dr. Hopfenbeck was still observing marked

18  symptoms of mania.  Specifically, Dr. Hopfenbeck noted that plaintiff had marked symptoms

19  of mania, pressured and very rapid speech, and tended to over explain and get off track.  AR at

20  325-30.  Dr. Hopfenbeck also expressly noted that plaintiff was not currently stable on his

21  medications, especially in light of his cannabis use.  He commented that plaintiff "[n]eeds

22  stabilization, to learn the difference between abuse of cannabis and legitimate uses."  AR at

23  330.  By December 2009, however, plaintiff's manic symptoms had largely resolved and he

24

1   reported being "happy with his geodone" and wanting to "stay med. compliant."  AR at 330-

2   31.

3        The ALJ could afford Dr. Hopfenbeck's assessment of moderate to marked limitations

4   in cognitive and social factors in November 2009 less weight than other medical evidence,

5   because these limitations pertained to Dr. Hopfenbeck's evaluation of plaintiff's manic

6   symptoms as well as his depressive symptoms.  AR at 29.  As it is undisputed that plaintiff's

7   mania abated once he became stable on his medications, the fact that Dr. Hopfenbeck's

8   assessment was conducted shortly after plaintiff sought treatment for the first time in many

9   years and had been "working with new psychiatrist and mental health center for less than 2

10  months" was a specific and legitimate reason for the ALJ to afford his assessed limitations less

11  weight.  AR at 29.

12        Furthermore, Dr. Hopfenbeck's failure to clarify to what extent plaintiff's cannabis use,

13  as opposed to his mental impairments, influenced the assessed limitations was also a specific

14  and legitimate reason for the ALJ to afford his opinions less weight.  Although Dr. Hopfenbeck

15  opined that plaintiff's "cannabis appears separable from mood disorder" and that alcohol or

16  drug treatment would not be likely to improve his ability to function in a work setting, he also

17  diagnosed cannabis dependence and indicated that plaintiff "needs [his] priority to be

18  stabilization on medications."  AR at 327.  Accordingly, plaintiff's "lack of treatment and

19  substance use as noted by Dr. Hopfenbeck during that time" were specific and legitimate

20  reasons for the ALJ to discount Dr. Hopfenbeck's opinion.  AR at 29.

21        3.   *Dr. Dees*

22        Examining psychologist Wayne Dees, Psy.D. evaluated plaintiff for the Social Security

23  Administration on April 22, 2010, shortly after plaintiff began treatment with DESC.  AR at

24  391-96.  He reviewed some of the records from plaintiff's prior hospitalizations, Dr.

REPORT AND RECOMMENDATION - 13

Hopfenbeck's evaluation, as well as treatment notes from Harborview Medical Center and Sea Mar Recovery Center.  AR at 391.  He noted that plaintiff's mood was depressed and that his affect was blunted.  Dr. Dees summarized his test findings by noting that plaintiff's "judgment and insight appear to be fair when he is not in a manic or severely depressed state.  He was able to complete both simple and complex instructions."  AR at 395.  Dr. Dees further noted that plaintiff's "ability to concentrate and his ability to perform mathematical operations are both within normal limits.  His performance indicates a moderately impaired ability to learn based on his recall of 2/3 previously learned words after a 5-minute delay."  AR at 395.  Dr. Dees diagnosed plaintiff with bipolar disorder and cannabis dependence, and assessed a GAF score of 40-45.  AR at 396.  He opined that plaintiff's prognosis was poor with regard to his ability to return to work, but successful intervention with mental health counseling may improve his ability to work in the future. AR at 395.

The ALJ gave "significant weight" to the majority of Dr. Dee's opinions.  Specifically, he noted that "in April 2010, Dr. Dees opined that the claimant was able to complete both simple and complex instructions.  He noted that the claimant's ability to concentrate and perform mathematical operations were both within normal limits."  AR at 29-30.  In particular, the ALJ pointed out that "Dr. Dees' opinion is based on exam mental status exam (sic) findings and [is] consistent with the medical evidence of record."  AR at 30.  However, the ALJ rejected "Dr. Dees' opinion that claimant's prognosis for returning to work was poor at that time," because this opinion was "inconsistent with his exam findings and the record as a whole.  The record supports that when the claimant is compliant with treatment, he had only mild to moderate limitations." AR at 30.

Plaintiff argues that the ALJ's reasons for rejecting Dr. Dees' opinion that plaintiff's prognosis for returning to work was poor were not specific, legitimate, or supported by

1    substantial evidence in the record.  Plaintiff asserts that "first, the ALJ failed to cite any

2    evidence in the record demonstrating that [plaintiff] was non-compliant with his prescribed

3    treatment . . . [plaintiff] took his medication as prescribed from September 2009 through his

4    hearing in April 2011."  Dkt. 20 at 8.  Second, plaintiff asserts that Dr. Dees' exam findings

5    and the medical record do not undermine Dr. Dees' opinion that plaintiff's prognosis for

6    employment was poor, because Dr. Dees noted in his assessment that plaintiff's insight and

7    judgment would not be fair if he was in a manic or severely depressed state.  *Id*.  Although "the

8    medical records demonstrate that [plaintiff's] medication improved his mania by the beginning

9    of 2010, his depression did not improve."  *Id.*

10           The Commissioner responds that Dr. Dees did not explain his reasons for concluding

11   that plaintiff had a poor prognosis for returning to work, and as the ALJ noted, "his conclusion

12   is directly contradicted by his objective assessment showing Plaintiff retained the mental

13   abilities necessary to remember and carry out even complex instructions."  Dkt. 21 at 8 (citing

14   AR at 395).  The Commissioner argues that Dr. Dees' failure to explain this "poor prognosis"

15   is problematic in light of this contradiction with the other parts of his opinion, and an ALJ need

16   not accept an unsupported, conclusory opinion.  *Id*. (citing *Bayliss v. Barnhart*, 427 F.3d 1211,

17   1216 (9th Cir. 2005)).  Finally, the Commissioner contends that the ALJ in this case reasonably

18   afforded significant weight to Dr. Dees' conclusions about plaintiff's functional limitations that

19   were supported, but no weight to the unsupported statement that plaintiff's prognosis to return

20   to work was poor. *Id*. (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

21   (upholding the ALJ's rejection of medical opinion where the conclusion about the claimant's

22   limitations was inconsistent with the physician's objective findings).

23           The ALJ did not err by rejecting Dr. Dees' conclusion that plaintiff's prognosis for

24   returning to work was poor, because this finding was inconsistent with his mental status exam

1    findings as well as the record as a whole.  Dr. Dees' conclusory assertion that plaintiff's

2    prognosis for returning to work was poor was inconsistent with the rest of his findings, which

3    reflected that plaintiff was currently capable of not only simple but also complex tasks.  *See*

4    *Tommasetti*, 533 F.3d at 1041 (upholding the ALJ's rejection of medical opinion where the

5    physician's conclusion about the claimant's limitations "did not mesh with her objective data

6    or history.").  Moreover, Dr. Dees' observation that plaintiff's "judgment and insight appear to

7    be fair when he is not in a manic or severely depressed state" does not equate, as plaintiff

8    argues, with a finding that plaintiff was unable to work if he continued to experience some

9    symptoms of depression even when he is stable on his medications.  AR at 395.

10         Additionally, the Court cannot agree with plaintiff's interpretation of the ALJ's

11   statements as suggesting, without adequate support, that plaintiff was somehow not complying

12   with his treatment recommendations at the time of Dr. Dees' opinion.  Rather, the point the

13   ALJ was making was that the record evidence shows that when plaintiff is stable on his

14   medications, "he had only mild to moderate limitations," even though he still experienced

15   symptoms of depression.  AR at 30.  The ALJ provided specific and legitimate reasons,

16   supported by substantial evidence in the record, for rejecting Dr. Dees' "prognosis" for

17   returning to work, while accepting the rest of his opinion.  AR at 30.

18                    4.    *ARNP Howes*

19         In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

20   sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well

21   as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

22   404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

23   his/her ability to work is competent evidence, and cannot be disregarded without comment.

24   *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-

1    acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR")

2    06-03p (noting that because such persons "have increasingly assumed a greater percentage of the

3    treatment and evaluation functions previously handled primarily by physicians and

4    psychologists," their opinions "should be evaluated on key issues such as impairment severity

5    and functional effects, along with the other relevant evidence in the file.").  If an ALJ chooses to

6    discount testimony of a lay witness, he must provide "reasons that are germane to each witness,"

7    and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

8        Noel Howes, ARNP, completed a Washington DSHS psychological evaluation form on

9    December 3, 2010.  AR at 522-26.[5]  ARNP Howes diagnosed plaintiff with major depressive

10   disorder, and assessed a GAF of 49 based upon "ongoing depressed mood and suicidal

11   thoughts."  AR at 523.  ARNP Howes opined that plaintiff was markedly limited in his ability to

12   perform routine tasks without supervision and to communicate and perform effectively in a

13   public setting with even limited public contact.  AR at 525.  ARNP Howes further indicated that

14   treatment would not improve plaintiff's ability to work because he had a "significant time [lapse]

15   since last employment."  AR at 525.  ARNP Howes recorded no problems, however, with

16   plaintiff's speech, thought process, thought content, cognition/organization, or insight/judgment.

17   AR at 525-26.  Finally, ARNP Howes indicated that plaintiff had reported that his mood was

18   depressed, but thought it was partially related to concerns about his family as well as being out of

19   communication with his six-year old daughter.  AR at 525.

20       The ALJ summarized ARNP Howes' findings but afforded ARNP Howes' opinion "little

21   weight" because "her opinion is inconsistent with the medical evidence of record.  Treatment

22   notes show that the claimant's symptoms were relatively mild when in compliance.  In addition,

23

24       [5] The ALJ refers to ARNP Howes as a female evaluator, whereas the parties refer to
     ARNP Howes as a male.

REPORT AND RECOMMENDATION - 17

1  the claimant's activities of daily living are inconsistent with disability." AR at 30.  Finally, the

2  ALJ noted that "Ms. Howe is not an acceptable medical source."  AR at 30.

3  Plaintiff contends that the ALJ failed to provide germane reasons for rejecting ARNP

4  Howes' opinion.  Specifically, plaintiff asserts that although he was compliant with treatment, he

5  continued to suffer from severe depression.  Dkt. 20 at 12.  In addition, his daily activities were

6  not inconsistent with disability, as his "minimal activities of daily living do not constitute a

7  germane reason for rejecting ARNP Howe's opinion." *Id.* (citations omitted).  Plaintiff argues

8  that the daily activities cited by the ALJ, which included watching television, playing video

9  games, listening to music, checking his email occasionally and reading the bible, are not

10 inconsistent with ARNP Howes' opinion regarding his limitations and employability. *Id.*

11 The Commissioner responds that "the record revealed that, with treatment, Plaintiff

12 stabilized in December 2009 and further improved when he obtained housing in September 2010.

13 Mr. Howes does not explain the basis for his conclusions, except by recording a flat affect and a

14 blunted mood and stating Plaintiff has not worked in a long time."  Dkt. 21 at 9 (citing AR at

15 525-26).  In addition, the Commissioner contends "Mr. Howes' opinion that Plaintiff is unable to

16 communicate effectively in a work setting is not only unsupported by any clinical findings, it is

17 directly contradicted by examinations showing essentially normal cognitive functioning." *Id*. at

18 10-11 (citing AR at 393-94, 525).  Finally, the Commissioner argues that the ALJ properly

19 discounted Mr. Howes' opinion to the extent it conflicts with the claimant's daily activities. *Id.*

20 at 11 (citing *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999)).

21 As noted above, the ALJ was only required to provide germane reasons for rejecting

22 ARNP Howes' "other source" opinion.  The Court finds that the ALJ has satisfied this standard.

23 As a threshold matter, the Court notes that the ALJ concluded, as part of his credibility

24 assessment, that plaintiff's "activities of daily living are inconsistent with disability."  AR at 28.

REPORT AND RECOMMENDATION - 18

1    *See Molina*, 674 F.3d at 1112–13 (holding that a claimant's activities that are inconsistent with a

2    claimed level of impairment are a proper basis upon which to formulate an adverse credibility

3    determination).  Specifically, the ALJ found plaintiff less than credible because his reported

4    daily activities, which included caring for his mother and her home for three years until recently,

5    "getting out" daily and using public transportation, spending time with others watching

6    television and playing video games, reading, and listening to music with friends, were

7    inconsistent with his allegations of crippling depressive symptoms.  AR at 28-29.  *See Turner*,

8    613 F.3d at 1225 (ALJ properly found discrepancy between stated limitations and reported daily

9    activities undermined claimant's credibility).  Similarly, the ALJ cited plaintiff's self-reported

10   daily activities as evidence that contradicts ARNP Howes' assessed limitations.  AR at 30.

11   Plaintiff only challenges the ALJ's latter conclusion, and contends that his daily activities were

12   not a germane reason for the ALJ to discount ARNP Howes' opinion that his ability to

13   communicate with others in the workplace, even with limited public contact, is markedly limited.

14   Dkt. 22 at 10.

15          The Court cannot agree.  The ALJ reasonably concluded that plaintiff's self-reported

16   activities, undertaken on a regular basis, directly contradict ARNP Howes' opinion that plaintiff

17   has a markedly limited ability to communicate with others and perform effectively in a work

18   setting, even with limited public contact.  AR at 525.  As described above, plaintiff spends a

19   large amount of his time engaging in leisure activities with other people, which the ALJ could

20   reasonably consider to be inconsistent with ARNP Howes' finding of marked limitations in

21   plaintiff's ability to communicate with others in a work setting.  Accordingly, the inconsistency

22   between plaintiff's activities of daily living and ARNP Howes' assessed limitations was a

23   germane reason for the ALJ to decline to adopt ARNP Howes' opinion.  *See Morgan*, 169 F.3d

24   at 601-02 (upholding the ALJ's rejection of a physician's opinion that was inconsistent with the

claimant's activities of daily living, which suggested that the claimant's mental impairments did not prevent him from working). *See also Valentine* v. *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that where an ALJ has provided clear and convincing reasons for rejecting plaintiff's testimony, those reasons are equally germane to similar testimony by a lay witness).

Furthermore, as discussed in detail above, the ALJ did not err by concluding that "Treatment notes show that the claimant's symptoms were relatively mild when in compliance." AR at 30. Earlier in his written decision, the ALJ summarized the medical evidence in detail and explained how "the record supports that when the claimant is compliant with mental health treatment his symptoms improved." AR at 28. For example, the ALJ described how plaintiff reported improvement after several months of taking his geodon medication, which controlled his mania, and improved his concentration and ability to sleep. AR at 28. When plaintiff reported "that he was off his medication for three weeks," he experienced a worsening of his symptoms. AR at 30. This was also a germane reason for the ALJ to discount ARNP Howes' assessment of marked limitations in functioning, without any discussion of objective findings or reasons for these limitations. AR at 30. The ALJ did not err in evaluating ARNP Howes' opinion.

The role of this Court is limited. As noted above, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Thomas*, 278 F.3d at 954. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*. Although it is possible to interpret the medical evidence in the manner suggested by the plaintiff in this case, it is not possible to conclude that this is the only rational interpretation of the evidence. The ALJ did not err in his review and interpretation of the medical evidence.

1

## VIII.   CONCLUSION

2        For the foregoing reasons, the Court recommends that the Commissioner's decision be

3   AFFIRMED, and this matter be dismissed with prejudice.   A proposed order accompanies this

4   Report and Recommendation.

5        DATED this 19th day of July, 2013.

6

7   James P. Donohue
    _____

8   JAMES P. DONOHUE
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 21